



**FILED**
**Sep 02, 2022**
**02:48 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Kenneth Merritt | ) Docket No. 2020-08-0920 |
| | ) |
| v. | ) State File No. 49660-2020 |
| | ) |
| Flextronics, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Allen Phillips, Judge | ) |

---

### Affirmed and Certified as Final

---

In this appeal of a compensation hearing, the employee questions the trial court's exclusion of certain doctors' reports and the trial court's alleged actions during the trial regarding the employee's testimony. The employee alleged he suffered a work-related repetitive injury, but the authorized physician opined that the injury was not primarily caused by the employment. The employee obtained causation opinions from other physicians he saw on his own, but the trial court excluded those records as inadmissible. Following a trial, the court found the employee had presented no admissible medical proof of an injury arising primarily out of his employment and denied the employee's requests for temporary and permanent disability benefits, past medical expenses, and ongoing medical care. The employee has appealed. Having carefully reviewed the record, we affirm the trial court's order and certify it as final.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Kenneth Merritt, Memphis, Tennessee, employee-appellant, pro se

Paul T. Nicks, Germantown, Tennessee, for the employer-appellee, Flextronics, Inc.

### Factual and Procedural Background

Kenneth Merritt ("Employee") worked as a computer repair technician for Flextronics, Inc. ("Employer"). He alleged that in early July 2020, he suffered a work-related repetitive injury to his hands. Employee eventually reported his pain to Employer, but Employer did not provide a panel of physicians because it contended Employee did not

1

report that his condition was related to work. As a result, Employee sought medical treatment with Dr. Christian Fahey on his own and filed for short-term disability and FMLA leave.

Employee's first visit with Dr. Fahey was on July 28, 2020, and his chief complaint was pain in both hands with "gradual and insidious onset." Dr. Fahey observed that

[h]is findings and his history are nonspecific . . . . However most likely diagnosis is early (type 2) trigger finger. . . . I have received correspondence . . . inquiring as to causality. I have no data to state that this is a work-related condition and so therefore, at this time, my preliminary opinion is that this is not causally associated with his job, as defined by Tennessee Worker's [sic] Compensation law.

He diagnosed Employee with bilateral hand pain and ordered physical therapy. In addition to adding his causation opinion to his office note, Dr. Fahey responded to the causation inquiry from the short-term disability carrier on August 7 and offered his opinion that Employee's "medical condition . . . [was not] caused or contributed to by work related activities."

After speaking with a representative from the insurance company who provided the short-term disability policy, Employee came to believe he had suffered a work-related injury. He reported the injury to Employer and selected Dr. Fahey from an Employer-provided panel of physicians. Thereafter, Employee returned to Dr. Fahey on August 11, 2020, in follow-up for his hand pain. Dr. Fahey noted that Employee complained of "hypersensitivity ('like a mask')" and reported that physical therapy was not helping. Dr. Fahey noted that it was "more clear today that [Employee] doesn't have a trigger finger, rather he has pain mostly on the dorsum of both hands, in a sweat pattern change in both palms although right more significant than left. That would suggest that there is an issue with the nerves." In light of this finding, Dr. Fahey referred Employee for electrodiagnostic testing and discontinued physical therapy. He also returned Employee to work with restrictions.

In an addendum to his office note the following day, Dr. Fahey stated as follows:

I have received correspondence . . . asking for clarifications of work restrictions. So let me [be] all caps clear. IN MY PROFESSIONAL OPINION AS REQUIRED BY TN STAUTE [sic], I HEREBY EXPRESS A PROFESSIONAL OPINION THAT [Employee's] COMPLAINTS DO NOT MEET CRITERIA FOR A WORK RELATED INJURY OR DISEASE. THIS IS NOT A WORK RELATED CONDITION. So adjustor [sic] should close out [Employee's] file, there are no restrictions from the perspective of [workers' compensation]. Restrictions were given so that if

2

[Employee] desires he can take time off under FMLA for non work related symptoms.

(Emphasis in original.)

Electrodiagnostic testing was performed on August 14, 2020, and revealed moderate median neuropathy at both wrists, no ulnar neuropathy on either side, no evidence of cervical radiculopathy or brachial plexopathy involving either upper extremity, and no myopathy.

Despite having earlier notified Dr. Fahey of his intent to file a medical malpractice lawsuit against him, Employee returned to Dr. Fahey for a third and final time on August 27, 2020. Dr. Fahey stated that

once again [Employee] confronted me and insisted that it was my obligation to cure him of his ailments, [that his] injuries are whatever he says they are. He does have an abnormality on [electrodiagnostic testing] but that does not correspond to his symptoms. Furthermore, I have no evidence of a traumatic injury, and I have no clear reasoning to state that his conditions are causally associated [with] his job. I am discharging him at this point. I have nothing further to offer. Not in my opinion causally associated with his job, so not work related.

Employee then sought treatment on his own with two physicians and a physician's assistant.[1] He was sent for additional testing on October 7, 2020, at Memphis Arthritis and Rheumatology Clinic for bilateral hand and wrist pain he reported as beginning three months prior. He reported that the worsening pain began with overuse at work and that he had occasional numbness to the tips of his fingers. Medical records indicate the backs of Employee's hands were not painful but that he felt a sensation of "pressure on the backs of his hands." He stated that he had been told he had carpal tunnel syndrome and had been given injections with minimal relief. Employee was assessed with arthralgia of multiple joints, fatigue, and "disorder of bone, unspecified." At an October 14, 2020 follow up, the attending physician discussed Employee's lab and imaging results. Employee was diagnosed with rheumatoid arthritis and prescribed arthritis medications.

On October 29, 2020, Dr. Fahey prepared another note regarding causation following his review of the second opinion obtained by Employee. He stated:

---

[1] These medical care providers' notes as well as two Standard Form Medical Reports (Form C-32's), which are discussed below in detail, were marked for identification purposes only. In its order, the trial court concluded the documents did not comply with the legal requirements for admissibility.

I continue to believe that under the scientific evidence available, [Employee's] job does not have the frequency and severity required to qualify as worker [sic] compensation as defined by current TN law. . . . The simple fact of the matter is that the majority of cases of carpal tunnel syndrome are NOT work related. Rather, they are biological in nature. The only exceptions allowed under the current laws are unusual cases with an unusual exposure. Lastly, his initial statements of symptoms are inconsistent with carpal tunnel syndrome . . . .

The parties deposed Dr. Fahey on February 23, 2021. Throughout his deposition, Dr. Fahey reiterated his opinion that Employee's complaints and condition were not primarily caused by his employment. Dr. Fahey testified that the change in workers' compensation law with regard to repetitive injuries made it "difficult, if not impossible, to claim repetitive stress injuries particularly in your hand." He testified that while he couldn't quote the law, "the gist of it is that you have to have more than 50 percent likelihood, you have to have some proof, you know, with some scientific literature of more than 50 percent likelihood or you have to have a traumatic injury. You know, a fall where you break your wrist or something along those lines, something falls on you and something that's verifiable . . . . Not a repetitive series of events." Dr. Fahey opined that he didn't find a traumatic injury and "can't say, based upon the scientific literature, the people who do what he – what he does have more than 50 percent likelihood of it being caused by his job rather than by his health and his biology." In addition to his statements regarding what constitutes a repetitive injury under Tennessee's workers' compensation statutes, Dr. Fahey also reiterated his medical opinion that carpal tunnel syndrome is generally not a work-related condition. He pointed to scientific literature to support his opinion that a person's occupation is not a significant risk factor for developing carpal tunnel syndrome.

At a March 11, 2022 compensation hearing, the trial court considered Employee's request for permanent disability and medical benefits related to his hand/wrist condition. At trial, Employer offered Dr. Fahey's deposition testimony, which included his opinion regarding what constitutes a compensable repetitive injury under workers' compensation laws in Tennessee, as well as his opinion that Employee's condition was not greater than fifty percent related to his work with Employer. Employee attempted to offer into evidence two Form C-32s from orthopedic surgeons Dr. Michael Hood and Dr. Rommel Childress. Employer objected to the admissibility of both, arguing that neither satisfied the statutory requirements for admissibility set forth in Tennessee Code Annotated section 50-6-235(c). Specifically, Dr. Hood's Form C-32 contained no statement of the doctor's qualifications, and the court was unable to verify if it was the original document, both of which are statutory requirements. The Form C-32 from Dr. Childress was served on Employer less than twenty days prior to the compensation hearing and also did not contain the doctor's qualifications. Thus, the court ruled both Form C-32s were inadmissible as evidence. The court also excluded the medical records and bills Employee attempted to offer into evidence, noting that, standing alone, they are hearsay and inadmissible.

4

In its compensation hearing order, the trial court noted that Dr. Fahey stated on several occasions that Employee's condition was not greater than fifty percent related to his work, despite his mistaken belief of the law regarding repetitive injuries. The court determined that, as the authorized physician, Dr. Fahey's causation opinion was entitled to a presumption of correctness and concluded that Employee had failed to rebut this presumption. The court determined Employee was credible but noted he offered no admissible medical proof that his injury arose primarily out of his employment. Thus, the court denied Employee's claim and dismissed the case with prejudice on April 4, 2022.

On April 9, 2022, Employee filed two motions, a "Motion to Stay Compensation Order Denying Benefits" and a "Motion to Stay, Alter and Amend Compensation Order Denying Benefits."[2] In these motions, Employee contended that the Form C-32s of Drs. Childress and Hood should have been admitted into evidence and that the trial court "clearly overlooked" the rating and Form C-32 of Dr. Childress. In an April 22, 2022 order denying Employee's Motion to Stay, Alter and Amend Compensation Order Denying Benefits, the court noted that it had reviewed the Form C-32s of both doctors and all documents filed in TNComp, the Bureau of Workers' Compensation's electronic filing system, both before and after the compensation hearing. The court reiterated its conclusion that Employee failed to satisfy the admissibility requirements of section 56-6-235(c) and found no basis to amend the findings of fact pursuant to Rule 52.02 of the Tennessee Rules of Civil Procedure. Employee has appealed the April 4, 2022 compensation order denying benefits.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2021).

---

[2] On April 17, 2022, Employee filed a third motion titled "Motion to Amend Motion to Stay Compensation Order Denying Benefits," seeking to amend his prior Motion to Stay.

**Analysis**

Employee raises two issues in his notice of appeal, which we have restated as follows: (1) whether the trial court erred in excluding Employee's medical proof; and (2) whether the court provided "misleading assurance to guide [Employee] from testifying." However, in Employee's brief on appeal, he argues that his case should be remanded based upon the doctrines of equitable estoppel and excusable neglect.[3]

Specifically, Employee argues that he was "locked out of TN Comp [sic] for 3 months because of a glitch in the system" and that this is why he was unable to timely file the Form C-32s with the qualifications of each physician and the medical records and bills he attempted to enter into evidence. Thus, Employee contends that "[u]nder [e]quitable [t]olling, the 20-day Statute of limitation Rule 26 should be waived because of the system having a known flaw" that kept him from submitting certain documents within the prescribed time limit. Employee also requests relief under "Rule 60(b)(1) [sic] of the Tennessee Rules of Civil Procedure," asserting that the ombudsman's failure to advise him as to the statutory requirements concerning admissibility of certain documents was "excusable neglect which could have been pivotal in helping him to win his case." Employee contends he was "blindsided" by Employer's objections to the admissibility of certain documents at trial. Conversely, Employer asserts that, because Employee failed to raise these issues at trial, he waived these issues for purposes of an appeal.

It is well-settled that a litigant generally cannot raise issues on appeal that were not presented to the trial court. *See Keyes v. Bridgestone Ams.*, No. 2016-06-2007, 2017 TN Wrk. Comp. App. Bd. LEXIS 33, at \*7 (Tenn. Workers' Comp. App. Bd. May, 18, 2017) ("issues not presented to and decided by the trial court will not be considered by an appellate court"). The rationale for such a rule is that an appellate court is not in the position of a trial court and should not resolve issues of law or fact in the first instance. *See Cartwright v. Jackson Capital Partners, Ltd. P'ship*, 478 S.W.3d 596, 614 (Tenn. Ct. App. 2015) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."). Here, Employee failed to raise equitable estoppel or excusable neglect as issues for the trial court to consider. Accordingly, we treat Employee's arguments regarding equitable estoppel and excusable neglect as having been waived. *See Moore & Seiferth v. Ingles Markets, Inc.*, Nos. 2015-02-0193 & -0183, 2015 TN Wrk. Comp. App. Bd. LEXIS 54, at \*4 (Tenn. Workers' Comp. App. Bd. Nov. 4, 2015).

---

[3] We also note that Employee submitted additional documentation with his brief on appeal, some of which had not been submitted to the trial court. On appeal, we cannot consider documentation that was not properly admitted into evidence for the trial court's consideration. *See, e.g.*, *Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at \*13 n.4 (Tenn. Workers' Comp. App. Bd. May 18, 2015) (The Appeals Board "will not consider on appeal testimony, exhibits, or other materials that were not properly admitted into evidence at the hearing before the trial judge.").

With regard to the trial court's exclusion of Employee's medical proof, the Tennessee Workers' Compensation Law provides a mechanism to introduce the written reports of physicians into evidence at trial if, and only if, certain requirements are met. Tennessee Code Annotated section 50-6-235(c) provides, in relevant part, that a party can offer a written medical report from a doctor on a form prescribed by the Bureau of Workers' Compensation's Administrator *if* the form or an accompanying affidavit contains the original signature of the physician and the qualifications of the physician are included in either the body of the report or in an attachment. Tenn. Code Ann. § 50-6-235(c)(1). Further, notice of intent to use a Form C-32 must be provided to the opposing party not less than twenty days before its intended use. Tenn. Code Ann. § 50-6-235(c)(2). In Employee's brief on appeal, he concedes that the medical records and bills he attempted to introduce into evidence at trial failed to comply with statutory requirements necessary for admissibility. Specifically, although Employee provided notice of his intent to use the C-32 of Dr. Hood in a timely manner, the report contained no statement of the doctor's qualifications, and the court was unable to discern if the form had an original signature of the physician. In addition, the C-32 of Dr. Childress was served on Employer less than twenty days before the compensation hearing and did not contain a statement of his qualifications. Thus, both forms failed to meet the statutory requirements for admissibility and were excluded by the trial court.[4] We discern no error in this regard.

Finally, Employee asserts the trial court provided "misleading assurance to guide [Employee] from testifying." However, Employee fails to address this issue in his brief and provides no evidence in support of this contention. Our review of the record reveals Employee testified at the compensation hearing and was given the opportunity at trial to offer whatever testimony he believed was relevant to and supportive of his claim. Accordingly, we conclude this issue has no merit.

---

[4] Although we agree with the trial court's exclusion of Employee's medical proof at trial, we note that Dr. Fahey's causation opinion was, to some extent, based on a misunderstanding of Tennessee law regarding the issue of repetitive motion injuries. *See* Tenn. Code Ann. § 50-6-102(14) (the term "injury" includes "cumulative trauma conditions" and "repetitive motion conditions" if the injured worker proves that such a condition arose primarily out of and in the course and scope of the employment). According to Rule 703 of the Tennessee Rules of Evidence, a court "*shall* disallow testimony in the form of an opinion or inference *if the underlying facts or data indicate lack of trustworthiness*." Tenn. R. Evid. 703 (emphasis added). Because Dr. Fahey's records and testimony show he relied on a flawed definition of compensability for repetitive motion injuries, the trustworthiness of his causation opinion should have been assessed under Rule 703 before it was admitted into evidence and assigned a presumption of correctness. However, we conclude that even if the admission of Dr. Fahey's causation opinion was error, it was harmless error under the circumstances because Employee did not submit any *admissible* medical proof or medical causation opinions supporting his claim. Thus, Employee's claim ultimately failed not because of the introduction of Dr. Fahey's testimony but because Employee did not satisfy his burden of proof.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and certify it as final. Costs on appeal are taxed to Employee.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Kenneth Merritt | ) | Docket No.  2020-08-0920 |
| | ) | |
| v. | ) | State File No.  49660-2020 |
| | ) | |
| Flextronics, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 2nd day of September, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Kenneth Merritt | | | | X | ken-merritt@msn.com |
| Paul Nicks | | | | X | pnicks@travelers.com jschmid6@travelers.com |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov